UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MERLYN MCNEAL,

        Plaintiff,

    v.

J.P. MORGAN CHASE BANK, N.A.,
CHASE HOME FINANCE LLC, J.P.
MORGAN CHASE & CO., and FEDERAL
NATIONAL MORTGAGE ASSOCIATION,

        Defendants.

No. 16 CV 3115

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Plaintiff Merlyn McNeal bought a home financed by an adjustable-rate mortgage loan. She alleges that the handling of her mortgage—assignment, assessment of fees, escrow calculations, foreclosure, and communication about the mortgage—was unlawful in a variety of ways and sues defendants JPMorgan Chase Bank, N.A., Chase Home Finance LLC, JPMorgan Chase & Co., and Federal National Mortgage Association (Fannie Mae).[1] She brings claims against the Chase defendants under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e). She brings claims against all defendants for violations of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2, violations of the Residential License Mortgage Act, 205 ILCS 635/1-3, breach of contract, and unjust

---

[1] Although the caption uses "J.P. Morgan," defendants' filings use "JPMorgan." The court follows defendants' spelling.

enrichment. The defendants move to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6), and JPMorgan Chase & Co. also moves to dismiss the claims against it under Federal Rule of Civil Procedure 12(b)(1). For the following reasons, the defendants' motions to dismiss are granted.

## I.    Legal Standards

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Claims sounding in fraud are subject to the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b), which requires a plaintiff to describe the "who, what, when, where, and how of the fraud." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013). The court must construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but the court need not accept legal conclusions or conclusory allegations. *Id*. at 946. A plaintiff's failure to respond to an argument raised in a motion to dismiss forfeits any argument on that issue. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[A] litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss."); *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("An unresponsive response is no response.").

McNeal has attached multiple documents to her complaint, including her mortgage, the note, an assignment of the mortgage, a loan modification agreement, and other communications between McNeal and "Chase." (The letters refer to just

"Chase" but appear to be from JPMorgan Chase Bank.) The documents will be considered because "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice" may be considered on a motion to dismiss. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013); Fed. R. Civ. P. 10(c).[2] Two of JPMorgan Chase Bank's exhibits, which ordinarily would not be considered, *see Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998), are central to McNeal's claim that the Chase defendants failed to timely respond to her written requests, and so will be considered. McNeal attaches to her complaint her letters to JPMorgan Chase Bank, [1-4] and [1-10],[3] and JPMorgan Chase Bank attaches two letters in January and February 2016 responding to McNeal. [17-5]; [17-6]. McNeal does not dispute the response letters' authenticity or argue that they cannot be considered at this stage. A plaintiff cannot thwart consideration of a relevant, central document by failing to attach or reference it. *See 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002).

## II. Background

In June 2007, Merlyn McNeal obtained a $261,000 adjustable-rate mortgage from BNC Mortgage, Inc. to purchase a residence in Country Club Hills, Illinois.

---

[2] Exhibit 8 filed by McNeal (an escrow shortage statement) was incomplete. [1-8]. JPMorgan Chase Bank submitted a complete copy of the document with its motion to dismiss. [17-4]. McNeal did not deny that the bank's exhibit was, in fact, a complete copy of her Exhibit 8, and therefore I use defendant's version when evaluating the sufficiency of plaintiff's complaint.

[3] Bracketed numbers refer to entries on the district court docket.

The interest rate was set at 9.125% for the first two years and capped at 16.215% thereafter. Under the mortgage note, payments were to be made to Chase Home Finance, LLC. (Chase Home Finance merged with JPMorgan Chase Bank—the parties do not address any relevant distinction between the two for the purposes of these motions.) In February 2013, McNeal's mortgage was assigned from Mortgage Electronic Registration Systems, Inc.—as nominee for BNC—to JPMorgan Chase Bank in February 2013. [1-3]. McNeal alleges that this assignment was fraudulent and that soon after she entered into the mortgage, Fannie Mae became (and is currently) the owner of McNeal's loan. McNeal does not provide any factual detail to explain the basis for this allegation. However, attached to the complaint are JPMorgan Chase Bank communications (in 2015) that reference Fannie Mae as the owner of McNeal's mortgage loan. *See* [1-5] at 2; [1-6] at 5. (JPMorgan Chase Bank and Fannie Mae are notably silent on this issue in their briefs, but ultimately it is not relevant to the disposition of their motions.)

In March 2013, JPMorgan Chase Bank filed a foreclosure complaint against McNeal in the Circuit Court of Cook County. McNeal responded to the lawsuit and applied to JPMorgan Chase Bank for assistance with a loan modification. Around a year later, summary judgment was entered against McNeal in the foreclosure action. In May 2015, JPMorgan Chase Bank offered McNeal a three-month trial period payment plan to begin in July 2015, which if successful would lead to a loan modification. When she was offered the trial period plan, McNeal was informed that her current escrow shortage was $773.78. [1-5] at 5. McNeal and JPMorgan Chase

Bank entered into a loan modification agreement in early November 2015. [1-7]. A few weeks later, JPMorgan Chase Bank sent McNeal an escrow shortage statement, stating that her escrow would reach a $3,989.74 shortage in 2016. [1-8]. A month later, McNeal sent JPMorgan a letter, seeking information on her mortgage servicing. [1-10]. JPMorgan Chase Bank responded in January 2016. [1-11]. McNeal also sent the bank two letters (one in December 2014, one in December 2015) which are the subject of her RESPA claim. [1-4]; [1-10]. JPMorgan Chase Bank responded in January and February 2016. [17-5]; [17-6].

Although McNeal avoided foreclosure and received a loan modification, she alleges that the defendants' handling of her mortgage and loan modification was fraudulent, deceptive, and unfair, and she sued within a few months of entering into the loan modification agreement.

## III. Standing

Under Rule 12(b)(1), "the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor, unless standing is challenged as a factual matter." *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 691 (7th Cir. 2015). As the party invoking federal jurisdiction, McNeal bears the burden of alleging that she has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct and that is likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

JPMorgan Chase & Co. moves to dismiss all claims against it under Rule 12(b)(1), arguing that McNeal lacks standing to sue JPMorgan Chase & Co. because

her alleged injuries are based on unauthorized fees, mortgage foreclosure, or escrow payments. Because there are no allegations tracing these injuries to JPMorgan Chase & Co. (as opposed to JPMorgan Chase Bank, as loan servicer, or Fannie Mae, as possible owner of the mortgage), JPMorgan Chase & Co. maintains that McNeal's alleged injuries are therefore not traceable to or redressable by JPMorgan Chase & Co., a holding company. McNeal offers no response and fails to acknowledge JPMorgan Chase & Co.'s separate motion to dismiss in its entirety. *See* [31] at 1. McNeal has failed to meet her burden to establish standing for her claims against JPMorgan Chase & Co., and she has forfeited any argument that she has standing for those claims. *See Alioto*, 651 F.3d at 721; *Lekas*, 405 F.3d at 614. However, courts have an independent obligation to assure that standing exists, *Summers v. Earth Island Institute*, 555 U.S. 488, 499 (2009), and "the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication *of the particular claims asserted*." *Int'l Primate Prot. League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 77 (1991). McNeal does not have standing to bring her RESPA, ICFA, RMLA, breach of contract, and unjust enrichment claims against JPMorgan Chase & Co. because these claims all arise out of her mortgage, loan modification, and loan servicing, but her complaint lacks allegations tying JPMorgan Chase & Co. to these actions. In her RICO claim, however, McNeal alleges that JPMorgan Chase & Co. is part of an enterprise that caused her harm. These allegations are sufficient—albeit barely—to allege Article III standing. *See*

*Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim.") (marks omitted). McNeal has standing to assert the RICO claim against JPMorgan Chase & Co., but her other claims against JPMorgan Chase & Co. are dismissed without prejudice for lack of standing. *See Remijas*, 794 F.3d at 697.

## IV.    Rule 12(b)(6)

### A.    Racketeer Influenced & Corrupt Organizations Act

McNeal asserts that the Chase defendants violated RICO, 18 U.S.C. § 1962(c), by engaging in an enterprise to create fraudulent mortgage assignments and collect improper fees through mail and wire fraud. RICO "is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity," and it "does not cover all instances of wrongdoing." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006). Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." To state a § 1962(c) claim, a plaintiff must "demonstrate (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Rao v. BP Prods. N. Am., Inc.* 589 F.3d 389, 399 (7th Cir. 2009). The Chase defendants contend that McNeal fails to allege the conduct and

enterprise elements and that she fails to satisfy the particularity requirement for alleging fraud under Federal Rule of Civil Procedure 9(b).

McNeal's allegations are inconsistent, lack particularity, and fail to state a § 1962(c) claim. Under RICO, an "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). This definition is to be interpreted broadly but "requires a plaintiff to identify a 'person'—*i.e.*, the defendant—that is distinct from the RICO enterprise." *United Food & Commercial Workers Unions & Emp'rs Midwest Health Ben. Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013) (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)). This is because RICO "liability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993); *see also Baker v. IBP, Inc.*, 357 F.3d 685, 692 (7th Cir. 2004) ("Without a difference between the defendant and the 'enterprise' there can be no violation of RICO.").

In McNeal's RICO count, she alleges that "Chase and its employees" conducted the "Chase enterprise" to fraudulently assignment mortgages, to fraudulently foreclose on McNeal, and to charge McNeal improper fees through use of wire and mail fraud. [1] ¶¶ 80–83; *see also* [1] ¶¶ 70–71. Other allegations of her complaint, however, state that JPMorgan Chase & Co., JPMorgan Chase Bank, Chase Home Finance, and Fannie Mae are the "enterprise," plus their "directors, employees, and agents," property preservation vendors, and real-estate brokers who

valued properties. [1] ¶ 68. McNeal also alleges that the "persons" involved were JPMorgan Chase & Co., JPMorgan Chase Bank, Chase Home Finance, and Fannie Mae.[4] [1] ¶ 67. But in response to the motions to dismiss—which argued that she improperly alleged persons indistinct from the enterprise—McNeal contends that she actually alleged that JPMorgan Chase Bank was the "person" and JPMorgan Chase & Co. was the "enterprise." [31] at 3.

In certain circumstances, a parent and subsidiary may be sufficiently distinct to satisfy the person-enterprise distinction, *see, e.g., Haroco, Inc. v. American National Bank & Trust Co.*, 747 F.2d 384, 400 (7th Cir. 1984), but merely alleging that a pattern of predicate acts were committed by a corporation that has agents or affiliates is insufficient to state a RICO claim. *Emery v. American Gen. Fin., Inc.*, 134 F.3d 1321, 1324 (7th Cir. 1998). Instead, "the firm must be shown to use its agents or affiliates in a way that bears at least a family resemblance to the paradigmatic RICO case in which a criminal obtains control of a legitimate (or legitimate-appearing) firm and uses the firm as the instrument of his criminality." *Id.*

McNeal's allegations—even if clarified in McNeal's response brief—do not sufficiently allege a distinction between the persons and enterprise. Instead, she

---

[4] Although Fannie Mae is mentioned in some of McNeal's RICO-related allegations, McNeal does not direct the RICO claim against Fannie Mae. Fannie Mae is not named in the actual count (including the header, unlike in other claims brought against all defendants). *See* [1] at 16; *compare* [1] at 20. The defendants briefed the motions to dismiss as if McNeal had not named Fannie Mae in the RICO claim, and McNeal's response brief only refers to the Chase defendants in the context of her RICO claim. [31] at 3–4. In any event, the complaint refers to Fannie Mae as both a person and part of the enterprise and so its alleged role still presents a lack of distinction between the persons and the enterprise.

alleges that members of a corporate family were both the persons and the enterprise. But "[a] parent and its wholly owned subsidiaries no more have sufficient distinctness to trigger RICO liability than to trigger liability for conspiring in violation of the Sherman Act, unless the enterprise's decision to operate through subsidiaries rather than divisions somehow facilitated its unlawful activity, which has not been shown here." *Bucklew v. Hawkins, Ash, Baptie & Co., LLP.*, 329 F.3d 923, 934 (7th Cir. 2003) (citation omitted) (collecting cases); *see also Bachman v. Bear, Stearns & Co.*, 178 F.3d 930, 932 (7th Cir. 1999) ("A firm and its employees, or a parent and its subsidiaries, are not an enterprise separate from the firm itself."); *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 226 (7th Cir. 1997) ("Read literally, RICO would encompass every fraud case against a corporation, provided only that a pattern of fraud and some use of the mails or of telecommunications to further the fraud were shown; the corporation would be the RICO person and the corporation plus its employees the 'enterprise.'").

Moreover, even if McNeal had sufficiently pled the existence of a distinct enterprise, she did not adequately allege that the Chase defendants (and their employees and agents) were conducting the affairs of a criminal enterprise, rather than their own affairs (even if unlawful). At best, McNeal's allegations amount to an argument that affiliates within the JPMorgan Chase corporate family unlawfully carried out their mortgage-related businesses. This is insufficient to allege a RICO claim. *See, e.g., United Food*, 719 F.3d at 855 ("Nor does the fact that [defendants'] activities were by all appearances illegal indicate that the companies were acting on

behalf of a distinct enterprise."); *Baker*, 357 F.3d at 691 (conduct and enterprise elements not sufficiently alleged where "[t]he nub of the complaint is that [defendant] operates *itself* unlawfully").

The complaint also lacks allegations outlining the enterprise, instead just generally referencing the "Chase enterprise." McNeal provides no allegations concerning its structure, duration, or organization, other than vaguely alluding to the corporate affiliation between the Chase defendants and alleged predicate acts. This is insufficient to allege a RICO enterprise. *See Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000) ("[A] RICO enterprise is more than a group of people who get together to commit a pattern of racketeering activity, there must be an organization with a structure and goals separate from the predicate acts themselves.") (citations and marks omitted); *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995) ("[A] nebulous, open-ended description of the enterprise does not sufficiently identify this essential element of the RICO offense."). McNeal's allegations (even of unlawful conduct) are insufficient to allege a § 1962(c) claim. *See, e.g., Gamboa*, 457 F.3d at 705. (RICO "does not cover all instances of wrongdoing" but instead "is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity.").[5]

---

[5] McNeal also fails to meet the particularity requirements for alleging fraud claims under Federal Rule of Civil Procedure 9(b). In the context of a RICO claim, the plaintiff "must, at a minimum, describe the predicate acts [of fraud] with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud" and "plead sufficient facts to notify each defendant of his alleged participation in the scheme." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998) (citations omitted). McNeal's allegations regarding the "persons" and "enterprise" are inconsistent, and while McNeal

## B. Real Estate Settlement Practices Act

McNeal alleges that the Chase defendants violated the Real Estate Settlement Practices Act (RESPA), 12 U.S.C. § 2605(e), by failing to respond to McNeal's "qualified written requests" for information relating to her mortgage in December 2014 and in December 2015. While McNeal brings the RESPA claim against the "Chase" defendants, her complaint and brief acknowledge that RESPA claims impose obligations on a loan servicer, which here (as McNeal alleges) is JPMorgan Chase Bank. Nothing in her RESPA allegations is directed at JPMorgan Chase & Co.

McNeal fails to state a RESPA claim against JPMorgan Chase Bank. Section 2605(e) requires a loan servicer to promptly respond to a borrower's "qualified written request" regarding an account error or request for information. However, § 2605(f) "indicates that the statute was intended to redress *actual* damages caused by the failure of the loan servicer to provide information to the borrower." *Diedrich v. Ocwen Loan Servicing, LLC*, No. 15-2573, 2016 WL 5852453, at *4 (7th Cir. Oct. 6, 2016). For these reasons, actual damages are an essential element of a RESPA claim. *Id*. at *5–7. McNeal fails to allege any actual damages, only alleging that she is entitled to statutory damages and her litigation expenses for the instant action.

---

alleges that the 2013 mortgage assignment to JPMorgan Chase Bank was fraudulent and that she was assessed improper fees, she fails to allege how to the specific defendants allegedly participated in a racketeering scheme. Instead, she clumps the "Chase" defendants in a vague scheme of mail fraud without explaining any of the defendants' specific roles in an enterprise or their conduct in coordinating the predicate acts. McNeal fails to allege the "who, what, when, where, and how of the fraud" as required under Rule 9(b). *Cincinnati Life*, 722 F.3d at 948.

[1] at 19. But "simply having to file suit" as a result of a loan servicer's alleged failure to respond to a qualified written request in violation of RESPA "does not suffice as a harm warranting actual damages." *Diedrich*, 2016 WL 5852453, at *6 (marks omitted). McNeal's RESPA claim (based on either letter) fails to state a claim because she does not allege that JPMorgan Chase Bank's alleged failure to comply with RESPA caused her actual damages.

There are other problems with McNeal's RESPA claim. Her December 2014 letter, [1-4], is not a "qualified written request" because, as McNeal indeed alleges, it "disputes a loan modification approval" that would require an increased monthly payment. [1] ¶ 48. The letter expresses McNeal's frustration with the offered loan modification and presents several reasons for why she seeks a lower monthly payment, but it does not ask Chase to correct any current errors with her mortgage account or for other information. Moreover, in response to the motions to dismiss, McNeal does not argue that the 2014 letter was a qualified written request. [31] at 4–5. For the December 2015 letter, [1-10], JPMorgan Chase Bank does not dispute that it was a "qualified written request" but argues that it timely responded to McNeal's request with two letters supplying the requested information, which were attached to its motion to dismiss. [17-5]; [17-6]. These letters are central to the RESPA claim, are not challenged by McNeal, and establish that defendant timely responded to the December 2015 letter. The RESPA claim is dismissed.

## C.    Illinois Consumer Fraud & Deceptive Practices Act

For an Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2, (ICFA) claim based on deceptive practices,[6] a plaintiff must allege: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 180 (2005). McNeal alleges that "Chase" and Fannie Mae violated the ICFA by charging McNeal unnecessary property fees and default-related fees, and by increasing her mortgage payment due to an escrow shortage in November 2015. She alleges that she relied upon "these statements" misrepresenting amounts owed when she signed the loan modification and made her monthly payments. The defendants argue that McNeal has failed to plead the elements of an ICFA claim (and without sufficient particularity) and that her exhibits show that she was not damaged.

McNeal has failed to state an ICFA claim with the requisite particularity. She does not explain how Fannie Mae (or JPMorgan Chase & Co.) played a role in the alleged fraud, and by process of elimination, the court (and defendants) are left to guess that the "Chase" entity involved was JPMorgan Chase Bank, the servicer of her mortgage, since the accusations relate to her loan modification and monthly payments. Perhaps McNeal was confused because some of the complaint's exhibits

_____

[6] Section 10a(a) of the act authorizes private causes of action for practices proscribed by section 2. 815 ILCS 505/10a(a); *Avery*, 216 Ill.2d at 179.

are from "Chase" (without specifying which Chase entity). But merely alleging that "Chase" took certain actions while trying to state a claim against three different JPMorgan Chase entities and Fannie Mae is insufficient for the purposes of Rule 9(b). *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) ("One of the purposes of the particularity and specificity required under Rule 9(b) is to force the plaintiff to do more than the usual investigation before filing [her] complaint.") (marks omitted).

McNeal, moreover, fails to allege the requisite elements for an ICFA claim. There are two different parts to her ICFA claim—the allegedly unauthorized fees and the escrow shortage. For the fee issue, even assuming that the fees were unauthorized or unreasonable, McNeal alleges no actual damages, which is an element of an ICFA claim. *Avery*, 216 Ill.2d at 180. In her complaint, she alleges that she was injured by having her account assessed these fees, but she does not allege that she ever paid any of these fees, and her prayer for relief only seeks statutory damages, litigation expenses, and punitive damages. In response to the motions to dismiss, McNeal points to the alleged corporate advance fees (for property inspection, publishing sale, and costs related to sheriff's sale) as of October 2015, [1] ¶ 62, and Exhibit 11, which is a response from "Chase" to McNeal's request for information detailing the corporate advance fees for McNeal's account since November 2008 through January 2016. [1-11]. McNeal does not allege or argue that she ever paid any corporate advance fees, however, and Exhibit 11

explains that as part of the loan modification process, *all* of these fees were waived and McNeal would not have to repay them. [1-11] at 1, 7.

McNeal contends that the fees were not actually waived and that this is a factual issue that should not be decided upon a motion to dismiss. But even on a motion to dismiss, the court may consider documents attached to the complaint and central to McNeal's claims. *See Williamson*, 714 F.3d at 436. McNeal attached to the complaint and relied upon an exhibit which stated that all the corporate advance fees were waived. There are no factual allegations in her complaint to dispute or contradict this—McNeal points to none and provides no explanation to support her contention that the fees were not waived. "A plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *In the Matter of Wade*, 969 F.2d 241, 249 (7th Cir. 1992). McNeal has done so here. *See Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 754, 758 (7th Cir. 2002).

Regarding the escrow shortage, McNeal does not respond to the defendants' arguments that her complaint fails to identify any deceptive statements about her escrow payments and that her exhibits show she was told that her escrow payments were not fixed and could change, even after loan modification. McNeal's failure to respond to these arguments forfeits any response that she could have made. *See Kirksey*, 168 F.3d at 1041. And her allegations and exhibits do not show any deceptive statements. For example, McNeal's complaint cites to a paragraph from JPMorgan Chase Bank explaining how McNeal's trial period plan payments were

calculated, but McNeal omitted the sentence stating: "Your modified monthly payment may change if your property taxes and insurance premiums change, as permitted by law." *See* [1] ¶ 52; *compare* [1-5] at 5. This exhibit also states that after the loan modification, McNeal's monthly principal and interest payments would be fixed for the life of her mortgage, but that "Your new monthly payment will also include an escrow for property taxes, hazard insurance and other escrowed expenses, but your servicer will separately notify you of the escrow amount to include with your monthly payment. If the cost of your homeowners insurance, property tax assessment or other escrowed expenses increases, your monthly payment will increase as well." [1-5] at 6. Similarly, the loan modification agreement explained that the escrow amounts were estimated and could change. [1-7] at 6–7. McNeal does not allege or argue that the $3,989.74 expected escrow shortage for 2016 was the result of improper charges or fees to her escrow account, and the escrow statement indicates that the only expected withdrawals were for county tax and homeowners insurance. [1-8]; [17-4]. McNeal has failed to state a deceptive practices claim based on either the fees or the escrow shortage, and therefore this claim must be dismissed.

### D. Residential Mortgage License Act (& Illinois Consumer Fraud Act)

McNeal alleges that BNC was not licensed when it originated her loan and therefore that her mortgage is void and unenforceable and that she was damaged by paying loan closing fees and her mortgage payments. From McNeal's complaint and response brief, it is not entirely clear whether she brings this claim under both the

Residential Mortgage License Act, 205 ILCS 635/1-3, and the ICFA. The allegations in this count refer only to the RMLA,[7] but the header also states "Illinois Consumer Fraud Act (Unfair)." [1] at 21. McNeal argues in her response that she is also asserting an unfair practice claim under the ICFA because it was unfair for BNC to violate the RMLA licensing requirements and for BNC to give her a predatory loan with a high interest. The defendants assert that McNeal's allegations that BNC was unlicensed are perfunctory and unsupported,[8] and that under RMLA, there is no private right of action to void mortgages obtained through unlicensed lenders.

### 1. *Residential Mortgage Licensing Act*

McNeal fails to state a claim under the RMLA to void her mortgage based on licensing requirements. "Originally, the RMLA was silent as to the existence of a private right of action to enforce licensing requirements. *See* 205 ILCS 635/1-3; *In re Jordan*, 543 B.R. 878, 883 (Bankr. C.D. Ill. 2016); *Graham v. Midland Mortg. Co.*, 406 F.Supp.2d 948, 952 (N.D. Ill. 2005). A private right of action under the RMLA licensing requirements was implied in *First Mortgage Co. v. Dina*, which held—in a foreclosure action—that a mortgage made by an unlicensed lender was void against public policy. 2014 IL App (2d) 130567, ¶¶ 18–25. But due to a legislative amendment, "*Dina* is no longer good law." *Fed. Nat'l Mortg. Ass'n v. Kimbrell*, 2016

---

[7] The parties' joint initial status report also represents that this count is only brought under § 1-3 of the RMLA—it says nothing about a claim under the Illinois Consumer Fraud Act. [36] at 2–3.

[8] McNeal alleges that Exhibit 9 to her complaint is a certified copy of an Illinois Department of Financial and Professional Regulation statement showing that BNC was not licensed ([1] ¶ 113), but there are no records from the department attached to the complaint. Exhibit 9 is a mortgage loan statement from JPMorgan Chase Bank. [1-9].

IL App (3d) 140662-U, ¶ 27. Soon after *Dina* was decided, a legislative amendment to the RMLA clarified that under the "existing law," a "mortgage loan brokered, funded, originated, serviced, or purchased by a party who is not licensed under this Section shall not be held to be invalid solely on the basis of a violation under this Section." 205 ILCS 635/1-3(e). "[A]s the 2015 amendment makes clear, there is not (and never has been) a right to avoid a mortgage that violates the RMLA." *Kimbrell*, 2016 IL App (3d) 140662-U, ¶ 27; *see Bank of N.Y. Mellon v. Robin*, 2016 IL App (2d) 151225-U, ¶ 55. The Illinois legislature's swift repudiation of *Dina* indicates that there was never a private right of action to void a mortgage based on a violation of the RMLA licensing requirements.[9]

McNeal argues that because she alleged *two* violations of the RMLA (that BNC originated her loan while unlicensed and that it gave her a predatory loan), her allegations fall outside the scope of this amendment. While she cites various provisions of the RMLA, they do not support McNeal's argument that she has a private right of action to enforce the RMLA's licensing requirements and instead actually reference the *state's* authority to punish violators. *See* 205 ILCS 635/1-3(a-1)(3) & 4-5.[10]

---

[9] Because McNeal has no RMLA claim for violations of the licensing requirements even if BNC were an unlicensed lender, the court need not address whether she sufficiently alleged that BNC was unlicensed or address defendants' assertions that BNC may have been exempt from licensing requirements. McNeal also fails to state a RMLA claim against JPMorgan Chase & Co. for the additional reason that she does not allege that it ever held her mortgage (and she did not respond to this argument).

[10] Under the RMLA, borrowers may have a private right of action against residential mortgage licensees who violate the act's lending procedures. *See* 205 ILCS 635/4-16 (private right of action for lending procedure violations); 205 ILCS 635/5-6–5-16 (listing lending

## 2. *Illinois Consumer Fraud Act*

McNeal also argues that she has sufficiently alleged an unfairness claim under ICFA because it was unfair for BNC to give her a predatory loan when BNC was unlicensed in Illinois. Her complaint barely references the ICFA or allegations of unfairness, however, and even assuming the truth of McNeal's allegations regarding BNC's loan origination practices, she fails to state an ICFA claim against any of the defendants in this case.

The ICFA provides that "[a]ny person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action *against such person*." 815 ILCS 505/10a(a) (emphasis added). Under § 10, there is no derivative liability under the ICFA. *Zekman v. Direct Am. Marketers, Inc.*, 182 Ill.2d 359, 370 (1998) ("The plain language of section 10a(a) provides a private cause of action against 'such person' that 'committed' the violation of the Act. The statute does not provide for a cause of action against those who knowingly receive benefits from the person committing the violation."). McNeal does not allege that any of the defendants were involved with the origination of her loan—her allegations solely involve (an allegedly unlicensed) BNC's origination of a predatory loan. By failing to allege that the defendants violated ICFA, McNeal has failed to state an ICFA claim, and it must be dismissed.

---

procedure violations). McNeal, however, does not reference these provisions, and in response to the motions to dismiss, she does not argue that she brought such an action for alleged violations of the lending procedures specified in §§ 5-6 through 5-16. Therefore she has forfeited any such arguments. *See Kirksey*, 168 F.3d at 1041.

### E.  Breach of Contract

"Under Illinois law, the elements of a breach of contract cause of action are (1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." *Association Ben. Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007). McNeal alleges: that she has a valid and enforceable mortgage contract with JPMorgan Chase Bank and Fannie Mae in the form of a mortgage, note, and loan modification; that she substantially performed her duties under the contract by keeping the property occupied, secure, safe, and by making her payments; that JPMorgan Chase Bank materially breached the note, mortgage, and loan modification by charging unauthorized fees, failing to provide accurate repayment figures, failing to maintain proper escrow calculations, failing to provide an accurate accounting, and failing to conduct its affairs in good faith. [1] ¶¶ 122–24. She also alleges that the defendants breached the express terms of the note and mortgage and its implied duty of good faith and fair dealing by charging unauthorized fees. [1] ¶ 125. Her alleged damages consist of the unauthorized fees, some unspecified interest, damage to her credit report, loss of equity in her home, and emotional distress and mental anguish. [1] ¶ 126. The defendants argue that McNeal fails to allege their breach, her performance, and damages. McNeal does not respond to most of these arguments, instead generally arguing that the court must accept her allegations as true and that she has adequately pled a claim for breach of contract. [31] at 8. This forfeits any arguments that McNeal could have brought in response. *See Alioto*, 651 F.3d at 721; *Kirksey*, 168 F.3d at 1041.

JPMorgan Chase Bank and Fannie Mae argue that McNeal cannot allege a breach of contract claim based on the note and mortgage because she defaulted on her payments (resulting in the foreclosure action) and therefore cannot allege that she substantially performed her obligations. McNeal does not respond—maintaining that "she alleged that she performed her duties under the contract by keeping the property occupied and safe." [31] at 8. Her lack of response forfeits any argument to excuse her failure to perform—for example, such as arguing that her failure to perform those conditions was excused by some earlier breach by the defendants. Without alleging that she performed "all required conditions" or explaining how her breach of contract claim survives despite her failure to perform, McNeal cannot state a claim for the defendants' breach of the note or mortgage based on alleged breaches after her default.

Moreover, as far as her breach of contract claim is premised on being charged default-related fees, McNeal cannot allege damages, since those fees have been waived. *See* [1-11].[11] Defendants argue that McNeal does not allege any facts supporting the other premises for McNeal breach of contract claim, specifically how defendants allegedly failed to provide proper escrow, repayment, and accounting figures, or what contractual provisions were breached by such alleged failures.

---

[11] Her alleged emotional distress and mental anguish are not recoverable damages for breach of contract. *See Parks v. Wells Fargo Home Mortg., Inc.*, 398 F.3d 937, 940–42 (7th Cir. 2005) (breach of contract "does not support emotional damages" under Illinois law). The defendants also argue for dismissal because the mortgage terms authorized JPMorgan Chase Bank to charge McNeal default-related fees. McNeal argues that defendants have not shown that such fees were reasonable and points to a number of dual charges occurring on the same day. As McNeal cannot allege damages, however, this issue need not be reached.

McNeal never alleges how the escrow statements are inaccurate or improper, and she does not explain what repayment or accounting figures were inaccurate. These barebones, conclusory allegations are insufficient to state a breach of contract claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). McNeal has failed to state a claim for breach of contract.

### F. Unjust Enrichment

"[T]o state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 137 (1989)). McNeal alleges that "[a]s a result of BNC not being registered under the RMLA, Chase and Fannie Mae has been [sic] unjustly enriched by McNeal's payments" and fees. [1] ¶ 128. Defendants argue that unjust enrichment is not a separate cause of action under Illinois law and that this claim fails because an express contract governs the parties' relationship. McNeal does not respond to either argument, merely reciting the elements of an unjust enrichment claim and stating that she has alleged such a claim.

The Seventh Circuit has acknowledged recent "uncertainty whether under Illinois law proof of unjust enrichment requires proving that the defendant has been enriched at the expense of the plaintiff by having committed a tort, breach of contract, or other unlawful act, or instead whether it is enough that it would be

'unjust' to allow the defendant to retain the benefit that he obtained at the plaintiff's expense." *Macon Cty., Ill. v. MERSCORP, Inc.*, 742 F.3d 711, 713–14 (7th Cir. 2014) (citing *Cleary*, 656 F.3d at 516–19). That issue need not be reached, however, because "[w]hen two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract." *Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 571 (7th Cir. 2016). McNeal does not dispute that the parties' relationship—including terms of payment—is governed by contract. Moreover, given the express statement in the RMLA amendment that a mortgage is not void merely because a broker was unlicensed, McNeal cannot use unjust enrichment as a back door to void her mortgage (or seek return of her payments) based on the RMLA licensing requirements.

It is unlikely that plaintiff can cure all the deficiencies in her complaint (particularly with respect to the RESPA and state-law claims). Nevertheless, the dismissal of the complaint is without prejudice because "[d]istrict courts routinely do not terminate a case at the same time that they grant a defendant's motion to dismiss; rather, they generally dismiss the plaintiff's complaint without prejudice and give the plaintiff at least one opportunity to amend her complaint." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).

## V. Conclusion

Defendants' motions to dismiss, [16], [18], [20], are granted. The complaint is dismissed without prejudice. Plaintiff has leave to file an amended complaint by December 8, 2016. If plaintiff does not file an amended complaint, this dismissal

will convert to a dismissal with prejudice as to plaintiff's claims against JPMorgan Chase Bank, N.A., Chase Home Finance LLC, Federal National Mortgage Association, and plaintiff's RICO claim against JPMorgan Chase & Co. The dismissal of JPMorgan Chase & Co. for the remaining claims will be without prejudice for the lack of standing.

ENTER:

Manish S. Shah
United States District Judge

Date: 11/17/2016