UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MERLYN MCNEAL,<br><br>     Plaintiff,<br><br>     v.<br><br>J.P. MORGAN CHASE BANK, N.A., J.P. MORGAN CHASE & CO., CHASE BANK, N.A., and NATIONWIDE TITLE CLEARING, INC.,<br><br>     Defendants. | No. 16 CV 3115<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff bought a home financed by an adjustable-rate mortgage. She sues defendants JPMorgan Chase Bank, N.A., JPMorgan Chase & Co., Chase Bank, N.A.,[1] and Nationwide Title Clearing for their roles in administering that mortgage.[2] She alleges that the assignment, assessment of fees, escrow calculations, foreclosure, and communications regarding her mortgage were unlawful in a number of ways. She brings claims against all four defendants under the Racketeer

---

[1] McNeal added Chase Bank, N.A. as a defendant, but Chase Bank was never served, has never appeared in this case, and is not a party to the motion to dismiss. A district court may dismiss a complaint under Rule 12(b)(6) sua sponte so long as there is a sufficient basis for the court's action apparent from the pleadings. *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987); *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 588 n. 3 (7th Cir. 2016) ("The Court dismisses a claim *sua sponte* under Federal Rule 12(b)(6) using the same standards applied as if it had been a motion to dismiss from the opposing party."). Because it is apparent that the arguments put forth by the other defendants would apply equally to Chase Bank, I consider, and dismiss, the claims against Chase Bank alongside those of the other defendants.

[2] Although the caption uses "J.P. Morgan," defendants' filings use "JPMorgan." The court follows defendants' spelling.

Influenced and Corrupt Organizations Act, 18 U.S.C § 1962(c). She brings a claim against "Chase"[3] for violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e). She brings claims against Chase and NTC for violations of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2. Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, defendants' motion to dismiss is granted.

I. **Legal Standards**

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Under the federal notice pleading standards, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The court must construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but the court need not

---

[3] In her amended complaint, McNeal defines "Chase" to mean Chase Bank, N.A. [49] ¶ 9. However, throughout her amended complaint she also uses "Chase Bank," *see e.g., id.* ¶ 72, 83, presumably to refer to Chase Bank, N.A. And in many instances where she refers to Chase, *see e.g., id.* ¶ 95, it is unclear whether she means to refer to Chase Bank, N.A. as she has defined the term, or if she means to refer to JPMorgan Chase Bank, the servicer of the loan, or to all of the Chase defendants collectively. For clarity, I refer to Chase Bank, N.A. as Chase Bank. When I use the term Chase, without specification, it is to mirror McNeal's use of the term in her complaint. When it is unclear to which party plaintiff refers when she uses "Chase," I read her complaint liberally and consider the different potential outcomes.

accept legal conclusions or conclusory allegations. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013). Under Federal Rule of Civil Procedure 9(b), a plaintiff alleging fraud must do so with particularity, which generally means a plaintiff must plead "the who, what, when, where, and how of the fraud." *Camasta*, 761 F.3d at 737.

## II. Background

Plaintiff Merlyn McNeal obtained an adjustable-rate mortgage for $261,000 to purchase a home in June 2007. [49] ¶ 34–35.[4] The interest rate was set at 9.125% for two years and subject to change every six months thereafter, up to 16.215%. *Id.* ¶ 35. The mortgage provided that under certain circumstances the lender may take actions to protect its rights in the property, including "entering on the Property to make repairs," as long as the lender gave notice before taking such action. *Id.* ¶ 36. Initially, McNeal was to make payments to Chase Home Finance, LLC. *Id.* ¶ 37. Federal National Mortgage Association (Fannie Mae) later became the owner of the loan and assigned it to JPMorgan Chase Bank. *Id.* ¶ 38–39.

JPMorgan Chase Bank filed a foreclosure complaint against McNeal in the Circuit Court of Cook County in March 2013. *Id.* ¶ 40. McNeal responded to the lawsuit and later applied to JPMorgan Chase Bank for loan modification assistance. *Id.* ¶ 41–42. JPMorgan Chase Bank approved McNeal for a trial period plan, effective July 1, 2015, and requiring three monthly trial payments. *Id.* ¶ 43–44.

---

[4] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The amended complaint is [49].

3

McNeal was informed at that time that her escrow shortage was $773.78. *Id*. ¶ 45. JPMorgan Chase Bank sent McNeal a final loan modification agreement in November 2015. [49-2] at 2. A few weeks later, Chase sent McNeal a statement showing that her escrow account would be $3,989.74 short in 2016 and giving her three options for repayment. [49-2] at 13. McNeal also received a statement showing charges for corporate advance fees—one in the amount of $50,438.09 and thirty-one separate fees, each for $999.99. [49] ¶ 52; [49-2] at 16–17. In December 2015, McNeal sent a letter requesting information about her loan, including an explanation about the corporate advance fees that had been assessed to her account. [49-2] at 18. In response, she received a list of all corporate advance balance fees charged to her account from November 2008 through January 2016. *Id*. at 19–24. The summary did not list either the $50,438.09 fee or any of the $999.99 fees. *Id*. It stated that the listed fees had been waived, and showed McNeal's corporate advance fee balance as $0.00. *Id*. at 19, 24.

McNeal filed a lawsuit against JPMorgan Chase Bank, JPMorgan Chase & Co., Fannie Mae, and Chase Home Finance LLC for their conduct in administering her mortgage. She alleged that the Chase defendants had violated RICO and RESPA. She also brought claims against all four defendants for violations of the Illinois Consumer Fraud and Deceptive Practices Act, the Residential Mortgage License Act, 205 ILCS 635/1-3, breach of contract, and unjust enrichment. Defendants moved to dismiss all claims under Federal Rule of Civil Procedure

12(b)(6); their motion was granted, without prejudice.[5] McNeal filed an amended complaint, dropping defendants Chase Home Finance, LLC and Fannie Mae, and adding defendants Chase Bank, N.A. and Nationwide Title Clearing, Inc. McNeal again alleges that defendants violated RICO, RESPA, and the Illinois consumer-fraud statute. Defendants filed a second Rule 12(b)(6) motion to dismiss. Though McNeal made some changes from her original complaint, she failed to remedy the legal deficiencies laid out in the court's previous order.

## III. Analysis

### A. Racketeer Influenced & Corrupt Organizations Act

Section 1962(c) of RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." To state a § 1962(c) claim, a plaintiff must "demonstrate (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 399 (7th Cir. 2009). A plaintiff must "identify a 'person'—*i.e.*, the defendant—that is distinct from the RICO enterprise." *United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013) (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)). This is

---

[5] JPMorgan Chase & Co. also moved to dismiss the claims against it under Federal Rule of Civil Procedure 12(b)(1). This motion was also granted.

5

because RICO "liability depends on showing that the defendants conducted or participated in the conduct of the *'enterprise's* affairs,' not just their *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993); *see also Baker v. IBP, Inc.*, 357 F.3d 685, 692 (7th Cir. 2004) ("Without a difference between the defendant and the 'enterprise' there can be no violation of RICO."). A parent and subsidiary may be sufficiently distinct to satisfy the person-enterprise distinction, *see, e.g., Haroco, Inc. v. Am. Nat'l Bank & Trust Co.*, 747 F.2d 384, 402 (7th Cir. 1984), but "[t]he firm must be shown to use its agents or affiliates in a way that bears at least a family resemblance to the paradigmatic RICO case in which a criminal obtains control of a legitimate (or legitimate-appearing) firm and uses the firm as the instrument of his criminality." *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1324 (7th Cir. 1998).

In her original complaint, McNeal failed to identify a person that was distinct from the RICO enterprise. *See McNeal v. J.P. Morgan Chase Bank, N.A.*, No. 16 CV 3115, 2016 WL 6804585, at *7–11 (N.D. Ill. Nov. 17, 2016). Her allegations were inconsistent, alleging that all four defendants were the persons; that all four defendants, plus their directors, employees and agents were the enterprise; and that Chase and its employees conducted the Chase enterprise. McNeal provided no information regarding the structure, duration, or organization of the enterprise. Her complaint further failed to assert that defendants were conducting the affairs of a separate criminal enterprise, rather than their own affairs. McNeal also failed to allege her RICO claim with sufficient particularity to satisfy Federal Rule of Civil Procedure 9(b).

In her amended complaint, McNeal asserts a RICO claim against all four defendants.[6] A number of the allegations are identical to her original complaint, and though there are some differences between the two, McNeal has still failed to allege a distinct person and enterprise. In her amended complaint, it remains unclear who is the 'person' distinct from the enterprise. McNeal asserts that JPMorgan Chase & Co., JPMorgan Chase Bank, and Chase comprise the enterprise and conduct its affairs. *Id.* ¶ 66, 83. She also alleges that each of these is a person responsible for operating and managing the affairs of the enterprise. *Id.* ¶ 67. She asserts that "[a]ll the enterprises described in this paragraph are an 'individual, partnership, corporation, association or other legal entity' and are therefore valid legal enterprises within the definition of § 1961(4) of the RICO Act." *Id.* ¶ 71. Later, however, she states that JPMorgan Chase & Co. is separate and distinct from the association of Chase Bank, JPMorgan Chase Bank, and NTC. *Id.* ¶ 87.

McNeal goes on to describe the three Chase defendants and their different roles in the enterprise. *See id.* ¶ 63–65; 85–86. She alleges that JPMorgan Chase & Co. engaged in a scheme to defraud and make a profit by using JPMorgan Chase Bank to file a foreclosure complaint based on falsified, fraudulent, and deficient documents. *Id.* ¶ 58, 62. She asserts that JPMorgan Chase Bank, which provides consumer loans, hired NTC to create a fraudulent assignment, and that Chase

---

[6] Defendants argue in their motion to dismiss that McNeal's claims against NTC must be dismissed because they were filed outside of the statutes of limitations for both RICO and the Illinois consumer-fraud statute. Because statutes of limitations are affirmative defenses that plaintiffs are not required to plead around, and because defendants' motion is granted on other grounds, I do not consider whether McNeal's claims against NTC are time barred.

7

Bank was responsible for servicing the loan,[7] ordering the property inspection fees, calculating the escrow statements, and mailing the statements containing misrepresentations and unlawful fees. *Id*. ¶ 68, 85–88. She also adds that Chase, in furtherance of the scheme, serviced McNeal's loan on behalf of the enterprise, routinely and systematically misrepresenting to borrowers that they had an escrow shortage after modifying their loans to maximize profits. *Id*. ¶ 61, 69. Presumably as support for this contention, McNeal states that Chase entered into a loan modification with Gwendolyn Barnes and sent her a mortgage statement with corporate advance fees. *Id*. at ¶ 75–77.

McNeal has failed to articulate a distinct person and enterprise to put defendants on notice of her theory of this claim. Her allegations are inconsistent—for example, it is not clear whether NTC is part of the alleged enterprise. And even if McNeal's complaint asserted that some or all of the defendants were distinct persons, she has not alleged any "resemblance to the paradigmatic RICO case in which a criminal obtains control of a legitimate (or legitimate-appearing) firm and uses the firm as the instrument of his criminality." *Emery*, 134 F.3d at 1324. The entities are not alleged to be instrumentalities of a scheme; instead, they appear to be conducting their own, albeit related, businesses. This is insufficient to allege a separate person and enterprise and state a RICO claim.

---

[7] Despite McNeal's allegation that Chase Bank serviced her loan, it appears that JPMorgan Chase Bank was responsible for servicing it. [61] at 5 n. 1.

McNeal failed to correct another defect in her original complaint as well—she does not adequately allege that any of the defendants acted on behalf of the enterprise and not behalf of themselves in their individual capacities. Though McNeal added conclusory assertions that defendants acted on behalf of the enterprise, *see id.* ¶ 69, 88, these assertions need not be accepted as true, and no other allegation pushes her complaint across the plausibility threshold. The facts McNeal does allege are consistent with each defendant going about its own business, which is insufficient to allege a RICO claim. *See United Food & Commercial Workers Unions*, 719 F.3d at 855.

**B.   Real Estate Settlement Practices Act**

RESPA requires loan servicers to respond to "qualified written requests" for information. 12 U.S.C. § 2605(e). Because RESPA "was intended to redress *actual* damages caused by the failure of the loan servicer to provide information to the borrower," actual damages are an essential element to a RESPA claim. *Diedrich*, 839 F.3d at 589–591. McNeal alleged in her original complaint that the Chase defendants failed to respond to qualified written requests she sent in December 2014 and 2015. The December 2014 letter was not a qualified written request requiring a response under RESPA. *See McNeal*, 2016 WL 6804585 at *5. The December 2015 letter was a qualified written request, but McNeal failed to state a RESPA claim because she did not allege actual damages and because she failed to address defendants' showing that they had complied with the Act's requirements by timely responding with the requisite information.

In her amended complaint, McNeal asserts only that Chase failed to respond to the December 2015 letter, violating RESPA. Most of her allegations are identical to her original complaint, though she adds that she "is entitled to actual damages for the emotional distress" she suffered.[8] Plaintiff argues in her response that emotional damages are actual damages and so she has alleged actual damages as required to state a RESPA claim. I do not reach this issue, however, because McNeal still fails to adequately address defendants' showing that that they timely responded to her letter. *See* [49-2] at 19; [61-3]. McNeal's conclusory allegations that Chase failed to provide the requisite information, to conduct a reasonable search, and to provide a compliant response are identical to the allegations in her original complaint. There are no plausible allegations, in light of the documents central to her claim, that defendants did not comply with RESPA; McNeal provides no explanation as to what in the letters was noncompliant or failed to satisfy defendants' duties under RESPA, and so she fails to state a RESPA claim against Chase.[9]

### C. Illinois Consumer Fraud & Deceptive Practices Act

To state a claim under the Illinois Consumer Fraud & Deceptive Practices Act a plaintiff must allege "(1) a deceptive act or practice by the defendant, (2) the

---

[8] McNeal does not include emotional distress damages, or actual damages more generally, in her prayer for relief, [49] ¶ 107, but I construe her complaint liberally and read her RESPA claim as asserting that she suffered emotional damages.

[9] Whether McNeal meant to assert a claim against Chase Bank, JPMorgan Chase Bank, or all three Chase defendants does not matter. Under any reading she fails to state a RESPA claim.

defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 180 (2005). In her original complaint, McNeal alleged that defendants charged unnecessary property fees and default-related fees and unlawfully increased her mortgage payment due to an escrow. There, McNeal failed to state a claim under the act.

First, McNeal referred generally to "Chase," which was insufficient for Rule 9(b) purposes because three different Chase entities were named defendants.[10] She also provided no explanation as to how either Fannie Mae or JPMorgan Chase & Co played a role in the fraud. Further, McNeal did not allege the requisite elements of the statutory claim because she failed to identify a deceptive act or practice and she did not assert that she had suffered actual damages—both of which are required. *See McNeal*, 2016 WL 6804585 at *5–6. The relevant exhibits showed McNeal had been informed that her payment could change as her expenses fluctuated and McNeal did not allege that the escrow shortage she owed was the result of improper fees. As a result, McNeal alleged no deceptive statement regarding either the changes to her payment, or the escrow shortage. And though McNeal alleged she was improperly charged certain fees, she never asserted that she paid any of those fees; and she failed to address defendants' evidence that those fees had been

---

[10] In her original complaint, unlike her amended complaint, McNeal did not define the term "Chase" to mean any of the individual defendants.

11

waived. *See McNeal*, 2016 WL 6804585 at *6 ("McNeal attached to the complaint and relied upon an exhibit which stated that all the corporate advance fees were waived. There are no factual allegations in her complaint to dispute or contradict this—McNeal points to none and provides no explanation to support her contention that the fees were not waived."). McNeal did not identify any actual damages she suffered, and sought only statutory damages, litigation expenses, and punitive damages.

In her amended complaint, McNeal alleges Chase and NTC violated the act. In addition to reasserting many of the allegations from her original complaint, McNeal states that it was deceptive to send statements misrepresenting the amount McNeal had to pay into her escrow account, and to modify her loan and then increase the payment due to a purported an escrow shortage when the shortage should have been capitalized in the modified loan. [49] ¶ 111. She asserts, also, that Chase misrepresented that certain fees had been waived when they had been capitalized in her final modification. *Id.*

McNeal's amended complaint further alleges that NTC violated the statute by creating, signing, and recording an assignment document that contained false, deceptive, or misleading information and where the signatory falsely claimed under oath to have personal knowledge of the information contained in the document. *Id.* ¶ 114. In signing the document the signatory falsely claimed—McNeal alleges—that she had conducted a review of the facts surrounding the transfer, made a conclusion

or determination based on her review, was the Assistant Secretary or authorized signatory, and that the mortgage and note had been properly transferred. *Id*.

McNeal's allegations are insufficient to demonstrate that any of the statements defendants made were deceptive. She provides no information showing that the payments to her escrow account were unwarranted or that the shortage should have been capitalized. Similarly, she still fails to address defendants' showing that it waived the fees charged to her account. There is no allegation that any of the information contained in the assignment document was untrue. And though her claim against NTC is based on her assertion that one of NTC's representatives signed the assignment document, she admits that she does not know whether the signatory was an employee of NTC or Chase, *id*. ¶ 114, and nothing on the document indicates that the signatory was affiliated with NTC. *See* [49-1] at 29. And again, McNeal asks only for statutory damages, litigation expenses, punitive damages, and such other relief the court deems proper—she does not assert that she suffered actual damages, as required by the statute. *See* [49] ¶ 118.

In addition to asserting a claim for deceptive practices, McNeal alleges defendants engaged in unfair practices. When assessing whether a practice is unfair under the consumer-fraud statute, a court considers "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 609 (7th Cir. 2013). "[T]o establish harm under

ICFA, a plaintiff must show 'that [s]he suffered substantial injury, and that [s]he could not avoid this injury.'" *Toulon v. Cont'l Cas. Co.*, No. 16-1510, 2017 WL 6378262, at *10 (7th Cir. Dec. 14, 2017) (quoting *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010)).

In her original complaint, McNeal asserted that defendants engaged in unfair practices when BNC (not a party to the suit) provided her with a predatory loan without a license. McNeal failed to allege that any of the defendants was involved in the origination of her loan. *See McNeal*, 2016 WL 6804585 at *8. In her amended complaint, McNeal instead alleges that it was unfair for Chase to inform her that she had an escrow shortage for one amount, and then increase that amount after the loan was modified. [49] ¶ 120. She also states it was unfair and against public policy to not give her the proper information regarding her escrow account prior to finalizing the modification. *Id.* ¶ 121. McNeal's conclusory allegations that defendants' conduct was unfair or against public policy are insufficient to state a claim. Like her allegations that defendants acted deceptively, she fails to put forth any facts to make her conclusory allegations plausible. McNeal does not explain how it was unfair for Chase to modify her payment when she had been informed that her payments were subject to change. McNeal also fails to allege what information she was entitled to that she did not receive during the modification process. Further, she does not elaborate on how defendants' actions offend public policy and she fails to acknowledge the other two factors—whether the actions were

immoral, unethical, oppressive, or unscrupulous, and whether they caused substantial injury—required to state a claim based on unfair practices.

McNeal's amended complaint failed to cure the fatal deficiencies in her original complaint.

## IV. Conclusion

Defendants' motion to dismiss [60] is granted. Plaintiff has amended the complaint once in response to a motion to dismiss, and as a result, there is no reason to believe that an amended complaint would cure the defects in plaintiff's complaint. The complaint is dismissed with prejudice. Enter judgment and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 12/22/17